IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

KENNETH McINTOSH, :
:
    Plaintiff, :
:
vs. :
: CIVIL ACTION 13-0296-M
CAROLYN W. COLVIN, :
Social Security Commissioner, :
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 14). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 20). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th

1

Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-five years old, had completed a high school education (Tr. 65), and had previous work experience as a forklift driver, overhead crane operator, and box spring builder (Tr. 58). In claiming benefits, McIntosh alleges disability due to diabetes, degenerative disc disease of the cervical spine, diminished visual acuity, and mild mental retardation (Doc. 13 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on March 22, 2011 (Tr. 139-45; *see also* Tr. 23). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that McIntosh was capable of performing his past relevant work (Tr. 23-36). Plaintiff requested review of the hearing decision (Tr. 19) by the Appeals Council, but it was denied (Tr. 7-9). Following the submission of newly-submitted evidence, the Appeals Council set aside its earlier decision, considered the new information, and, again,

denied Plaintiff's request to review the ALJ's decision (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, McIntosh alleges that: (1) The Appeals Council did not properly consider newly-submitted evidence; and (2) the ALJ erred in rejecting the opinion of an examining neuropsychologist (Doc. 14). Defendant has responded to—and denies—these claims (Doc. 15).

Plaintiff has claimed that the Appeals Council did not properly consider newly-submitted evidence. McIntosh refers to evidence provided by treating physician, M. J. Fitz-Gerald (Doc. 14, pp. 9-11; *see* Tr. 297-316).

It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[1] *see also* 20 C.F.R. § 404.1527 (2013). It is further noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence." *Cherry v. Heckler*,

---

[1] The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

3

760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.  To make that determination, the Court considers whether the claimant "establish[ed] that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level."  *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that the Appeals Council denied review of the additional evidence (Tr. 1-5).  So the Court will examine the newly-submitted evidence and make a determination as to whether—or not—it meets the requirements of *Caulder*.

On November 13, 2012, Dr. Maurice J. Fitz-Gerald examined

4

McIntosh for numbness in his left arm and pain in the left side of his neck and shoulder; he also suffered from diabetes and hypertension (Tr. 309-12). The doctor's notes indicate that Plaintiff had been involved in a motor vehicle accident two weeks earlier, causing neck pain, increased by head movement and lying down, that was radiating into the shoulder and down the arm; the pain, rated as ten on a ten-point scale, caused him anxiety, sleeplessness, and difficulty with fine manipulation. On examination, Fitz-Gerald noted that there was no decrease in suppleness in the neck though there was tenderness when Plaintiff turned his neck. There were cervical spine abnormalities, including tenderness on palpation, muscle spasm, numbness, and pain elicited by motion. The doctor's assessment was hypertension, type one diabetes mellitus, cervicalgia and shoulder pain due to a motor vehicle accident; he prescribed Lortab.[2] On November 30, the doctor's examination results were, essentially, the same as they had been previously; additionally, Fitz-Gerald noted neck pain was elicited by motion (Tr. 303-06). On December 28, examination and assessment results were consistent with previous reports; McIntosh received a Toradol[3]

---

[2] **Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[3] *Toradol* is prescribed for short term (five days or less) management of moderately severe acute pain that requires analgesia at the opioid level. *Physician's Desk Reference* 2507-10 (52nd ed. 1998).

5

injection and another prescription for Lortab (Tr. 299-302). On that same date, Dr. Fitz-Gerald completed a check-off box form indicating that Plaintiff could not "perform sustained work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule" and could not "maintain attention, concentration or pace for periods of at least two hours" (Tr. 298).

The Court finds that the three-prong standard has not been met here because there is little probability that the new evidence would change the ALJ's determination. The main thrust of the evidence concerns injuries McIntosh sustained from a motor vehicle accident that occurred after the ALJ's decision was rendered. That being the case, it does not relate to any of the evidence considered by the ALJ. The other evidence provided by the doctor, not detailed herein, relates to routine lab findings that are cumulative to evidence before the ALJ. Therefore, the Court finds that the newly-submitted evidence does not satisfy the *Caulder* requirements and that the Appeals Council did not err in denying review of the ALJ's determination.

Plaintiff next claims that the ALJ erred in rejecting the opinion of an examining neuropsychologist. McIntosh refers to the conclusions of John R. Goff. The Court notes that a

component of Plaintiff's argument, though not raised as a separate claim, is that, according to Goff's conclusions, the ALJ improperly determined that he was not mentally retarded under Listing 12.05C.

The Court notes that the introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2013). Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2013).

The Court notes that although the regulations require that Plaintiff demonstrate he suffered "deficits in adaptive behavior" before he turned twenty-two, 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2013), the Eleventh Circuit Court of Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001), has held "that there is a presumption that mental retardation is a condition that remains constant throughout life." The *Hodges* Court further held "that a claimant need not present evidence that she manifested deficits

7

in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." *Hodges*, 276 F.3d at 1266.

On July 19, 2012, Neuropsychologist John R. Goff examined McIntosh (Tr. 269-76). He first summarized the medical records that had been made available to him; the Neuropsychologist then summarized McIntosh's personal history, noting that he had never been treated for any mental or emotional problems. Goff noted that McIntosh's discourse was logical and coherent; he was depressed, but denied suicidal ideation. Plaintiff was oriented in all spheres; his logical memory for verbal material was very poor. He underwent several different tests; the validity indicators reflected straightforward performance. On the Wechsler Adult Intelligence Scale (WAIS-IV), McIntosh obtained a full scale IQ score of 65, falling within the mildly retarded range of psychometric intelligence; the Neuropsychologist noted that this was similar to his score of 64 on the Short Form Test of Academic Ability, taken when he was in high school. Goff noted that the score on the General Ability Index, a component of the WAIS-IV, fell between borderline intellectual functioning and mild mental retardation. On the Reitan-Indiana Aphasia Screening Test, Plaintiff had difficulty reading a sentence at the second grade level and could not read at the fourth grade level at all and could not perform simple math calculations. On

the Wide Range Achievement Test (WRAT-IV), McIntosh performed math, spelling, and reading at the third grade, beginning second grade, and mid-first grade levels, respectively; the reading score made McIntosh functionally illiterate. Goff noted that standardized test scores from the tenth grade revealed a reading score at the beginning second grade level while math and spelling scores were at the fifth grade level. The Neuropsychologist noted minor indications for anxiety, but, otherwise, found no indications for psychological issues. Goff diagnosed Plaintiff to be mildly mentally retarded. He went on to note the following:

> During this examination he had difficulty understanding, following carrying out and remembering all but the simplest of instructions. He would be seen as mistake prone I think and rather slow by supervisors, co-workers and others. He obviously has physical problems which interfere substantially with his ability to deal with the stresses and pressures of the workplace.

(Tr. 273). The Neuropsychologist also completed a mental medical source opinion form in which he indicated that McIntosh was markedly limited in his ability to understand, remember, and carry out simple, detailed, or complex instructions, deal with changes in a routine work setting, and use judgment in detailed or complex work-related decisions; he also indicated that

9

Plaintiff would be extremely limited in his ability to respond to customary work pressures and maintain attention, concentration, or pace for periods of at least two hours (Tr. 275-76). Goff found that these were lifelong restrictions.

In his determination, the ALJ summarized all of the medical evidence of record but found that "Goff's diagnosis of mental retardation and his accompanying medical source statement reflecting marked to extreme limitations are inconsistent with the record as a whole" (Tr. 29). The ALJ did not discuss—or dispute—the IQ score requirement to meet Listing 12.05C, but found that he did not meet the other requirements. Specifically, the ALJ found that he did not demonstrate significant subaverage general intellectual functioning manifested during the developmental period. As support for this conclusion, the ALJ noted that McIntosh had graduated from high school and had not repeated any grades or undergone special education classes in doing so; the ALJ found that this demonstrated that Plaintiff's "intellectual functioning during the developmental period was greater than could be expected of a mentally retarded individual" (Tr. 29). He further noted that "[w]hile the claimant alleged that he [was] unable to read and write, he admitted at the hearing that he [had been] able to take and pass written examinations up through high school so that he could graduate" (Tr. 29).

10

The ALJ went on to find that McIntosh had not demonstrated any deficits in adaptive behavior that were manifest before he was twenty-two years old (Tr. 29). The ALJ found that Plaintiff had not demonstrated deficits in communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, work, leisure, health, or safety during his developmental years; he also found that he had "not conclusively establish[ed] deficits in functional academic skills" during that period (Tr. 30). The ALJ went on to find no limitations in McIntosh's activities of daily living, social functioning, or concentration, persistence, or pace; there had been no episodes of decompensation (Tr. 30). The ALJ went on to point out that Plaintiff had worked successfully for many years.

The Court finds substantial support for the ALJ's rejection of Neuropsychologist Goff's conclusions. McIntosh has correctly pointed out that *Hodges* held "that there is a presumption that mental retardation is a condition that remains constant throughout life" and "that a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age of twenty-two, when she presented evidence of low IQ test results after the age of twenty-two." However, the Court finds that the ALJ has rebutted those presumptions. Although Plaintiff appears to have satisfied one of the requirements of 12.05C, he has not demonstrated all of them. The Court agrees

11

with the ALJ's conclusion that the marked and extreme limitations indicated by Goff are not supported by McIntosh's twenty-three-year work history, a history that included supervising five other employees in one of his jobs (Tr. 59, 176). It is further noted that Plaintiff did not quit working because of his impairments, but because his employer laid him off along with a large percentage of other workers (Tr. 58). Though McIntosh has demonstrated diminished intellectual functioning, the evidence does not support the limitations found by Goff.

Plaintiff has raised two different claims in bringing this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 18th day of December, 2013.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE